**John A. Cochran**, OSB No. 020022
1033 SW Yamhill St., Ste. 201
Portland, Oregon 97205
Phone: 360-601-8157
E-mail: johnpplllc@gmail.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON - TACOMA

| | |
|---|---|
| KRISTINE A. CUMMINGS,      )<br>       Plaintiff,                          )<br>      v.                                          )<br>NEWREZ, LLC, d/b/a SHELLPOINT  )<br>MORTGAGE SERVICING,       )<br>                                                 )<br>       Defendant.                        )<br>                                                 )<br>                                                 )<br>                                                 )<br>                                                 )<br>                                                 )<br>                                                 )<br>                                                 ) | Case No.<br><br>**COMPLAINT**<br>RCW 61.16.030; Failure to<br>Acknowledge Satisfaction of<br>Mortgage – Damages Order<br>Violations of the FDCPA; and<br>of Good Faith and Fair Dealing<br>Claim not subject to mandatory<br>   arbitration.<br><br>**<u>JURY TRIAL REQUESTED</u>** |

Kristine A. Cummings ("Plaintiff"), individual files this Complaint and Jury Demand for damages and injunctive and equitable relief arising from NewRez, LLC d/b/a Shellpoint Mortgage Servicing's ("Defendant" or "Shellpoint") violations of Real Estate Settlement Procedures Act ("RESPA"), the Homeowners Protection Act ("HPA") and the Revised Code of Washington ("RCW"). Plaintiff makes the following allegations upon information and belief. The allegations pertaining specifically to Plaintiff are based on her personal knowledge.

**Summary of the Claims**

COMPLAINT - 1

1.      The Plaintiff had a residential mortgage loan serviced by Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper") for her primary residence at 14605 N.E. Street, Vancouver, WA 98684 originated July 2000. The servicing of this loan falls under the federal guidelines of the Consumer Financial Protection Bureau ("CFPA") The CFPA is a federal consumer financial law. 12 U.S.C. § 5481(14). Under Sections 1031 and 1036 of the CFPA, "it is unlawful for any covered person to commit or engage in any unfair, deceptive, or abusive acts or practices." 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

2.      The Real Estate Settlement Procedures Act ("RESPA") and The Homeowners Protection Act ("HPA") are federal consumer financial laws. 12 U.S.C. § 5481(12), (14). Under Section 1036 of the CFPA, it is unlawful for any covered person "to offer or provide to a consumer any financial product or service not in conformity with federal consumer financial law, or otherwise commit any act or omission in violation of a federal consumer financial law." 12 U.S.C 5536(a)(1)(A). Violations of RESPA and the HPA are therefore violations of the CFPA. *Id.*

3.      During the global pandemic COVID-19, Congress passed the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") to provide relief to millions of homeowners struggling to make their mortgage payments because of the shutdowns and economic challenges caused by this contagious disease. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act was signed into law. See Pub. L, No. 116-136, 134 Stat 281 (2020). Section 4022 of the CARES Act affords homeowners who have experienced economic hardship as a result of COVID-19 to request forbearance on their loans, the Coronavirus Relief, and Economic Security Act ("CARES Act") Mortgage Payment Forbearance ("MPF").

4.      Upon request by the Plaintiff, Mr. Cooper approved the CARES Act MPF for her Fannie Mae ("FNMA") federally backed mortgage from March 2020 to August 2021. Mr.

COMPLAINT - 2

Cooper had honored the terms of the forbearance and no regular payments were made, no late fees were accessed, and the Plaintiff's credit report indicated paid as agreed. By June 2021, the Plaintiff was informed that she would be eligible for mortgage debt forgiveness up to $60,000. She was eligible for the full amount as her FNMA loan had been properly executed under the terms of the CARES Act MPF Agreement. On August 19, 2021, the Plaintiff had confirmed on the telephone with Mr. Cooper that the loan payments in forbearance would be moved to the end of the loan without any additional interest or fees. This would be a lump sum payment due with the final payment of the loan in 2030.

5.  Seeking liquidity relief due to an inability to maintain an unprecedented number of forbearance agreements, Mr. Cooper opted to sell millions of mortgage loans. The FNMA loan of the Plaintiff, serviced by Mr. Cooper, was sold to the Defendant. The Plaintiff discovered that her loan had been sold on September 14, 2021 while attempting to make the full agreed upon payment of $1,955.82 to Mr. Cooper online. She contacted Mr. Cooper by telephone and was informed that the loan had been sold and that she would be making this payment to the Defendant. She contacted the Defendant and was told that they had not received all of the necessary paperwork from the loan transfer and that she would have until October 1, 2021 to make her first payment without late fees or negative credit reporting.

6.  Prior to entering into the CARES Act MPF Agreement with Mr. Cooper, the Plaintiff investigated the terms of the agreement. Having been a senior mortgage loan underwriter for many years, the Plaintiff understood the importance of reviewing documents and understanding terms and conditions. Per the terms of the CARES Act MPF Agreement the mortgage loan servicer "could not require a lump sum payment at the end of the forbearance."

7.  When Mr. Cooper sold the CARES Act MPF loans per FNMA, it required all purchasers to "honor all approved forbearance arrangements." Additionally, FNMA stated that new servicers must offer borrowers, "a waterfall of loss mitigation options…which may include principal forgiveness prior to initiating any foreclosure on any loan."

8.  Plaintiff had originated the loan in July 2000 and had been making monthly payments for over 20 years on the property. She had never refinanced the property and had a small loan balance remaining. During this time, the mortgage servicer had changed numerous times and each time the terms and conditions of the loan had always remained consistent.

9.  The Defendant would not honor the CARES Act MPF Agreement and demanded $44,821.50 including principal, interest, taxes and insurance ("PITI") and added fees of $6,974.46 in servicing fees for a total demand of $51,795.96. Furthermore, in violation of RESPA, the Defendant had accepted a loan that had been dual tracked by Mr. Cooper. During the CARES Act MPF Agreement, Mr. Cooper ordered a Broker Price Opinion ("BPO") that was used solely for the benefit of the Defendant and charged the Plaintiff $713.13. The loan status was current and paid as agreed. This was part of the documentation that delayed the transfer and was being forwarded to the Defendant. Per CFPA, "there will be no additional fees, penalties, or additional interest added to your account."

10. The Plaintiff experienced the loss of her spouse of 25 years from cancer in February 2022. He had been the primary financial earner and all household income ceased upon his death. The Plaintiff had spent thousands of dollars on medical care and treatments attempting to prolong his life for her benefit as well as their children.

11. As the Defendant would not honor the terms of the CARES Act MPF Agreement originated by Mr. Cooper, and under the advisement of legal counsel, the Defendant filed for Chapter 13 bankruptcy. This was an expensive and personally traumatic experience since the Plaintiff had worked a lifetime to have impeccable credit. The sole reason would be to protect her home that was scheduled for foreclosure sale days before Christmas 2022. This was the only debt that she included in her bankruptcy.

12. On January 19, 2023, Plaintiff was informed by her attorney that a settlement had been reached in a pending case and funds were available to pay off her mortgage loan in its entirety. Under the advisement of her bankruptcy attorneys, she was finally able to order a payoff statement from Defendant by March 2023 due to delays caused by the bankruptcy.

13. A pay off statement was issued by Defendant valid from March 24, 2023 to April 24, 2023. Included in the pay off statement were instructions for completing the mortgage pay off process with the Defendant. All parties were notified that the loan would be paid off in order to remove the legal interest of the Defendant from the real property.

14. Certified funds were dispersed on April 11, 2023 via U.S. First Class Mail to the Payoff Department of the Defendant for $170,508.79. The Defendant was in receipt of the instructions to pay off the loan, certified funds in the amount of $170,508.79, the Defendants' Payoff Statement for the Plaintiff's loan, and a Letter of Intent to Pay off the loan signed by the Plaintiff. The Defendant had more than two weeks to process the payment until April 24, 2024.

15. The Plaintiff contacted the bankruptcy service department of the Defendant 11 times and authorized recorded telephone conversations on these different dates to inquire about

the payoff of the loan. The Plaintiff was instructed to "be patient," there was nothing else to be done and they "had everything they needed."

16. On May 19, 2023 the Defendant reported to the Plaintiff that that they wanted additional $3,718.62 because they were holding the funds and it was not paid off before April 24, 2023 due to a "high loan volume." The Defendant had been issued a certified check for $170,508.79 on April 11, 2023 to pay off a loan balance of $120,778.04.

17. The Defendant issued a new pay off statement dated May 19, 2023 for the new increased amount. On May 19, 2023, the Defendant was in receipt of the certified check dated April 11, 2023 for $170,508.79 and the certified wired bank funds $3,718.62.

18. As of June 15, 2023, the Defendant has been holding the funds for more than sixty days and refuses to pay off this debt and issue a Deed of Reconveyance in violation of RCW 61.16.030.

19. Due to the refusal of the Defendant to pay off this mortgage, the Plaintiff has been forced to remain in Chapter 13 Bankruptcy and pay 3 additional monthly payments to the Bankruptcy Trustee. Additionally, the Plaintiff is unable to make necessary structural repairs to the property as contractors will not work on a home in active foreclosure due to the added risks.

20. Rather than being able to heal from the traumatic loss of her husband, the Plaintiff has been forced to remain in Chapter 13 Bankruptcy, creating a relentless financial burden and severe emotional distress.

21. Plaintiff brings this action to put a stop to Defendant's improper servicing of loans and to grant the Plaintiff's request for Satisfaction of the Mortgage with damages.

## Parties

22. Plaintiff Kristine A. Cummings is a citizen of the United States and resides in Vancouver, Washington, she has a mortgage for real property serviced by the Defendant.

23. Defendant NewRez LLC, is a limited liability company organized under the laws of the state of Delaware, which has its principal place of business at 1100 Virginia Drive, Fort Washington, PA 19034.

## Jurisdiction & Venue

24. The Court has subject-matter jurisdiction over this action because it pertains to the real property located in Clark County which has jurisdiction over the permanent laws now in force within the State of Washington.

25. Venue is proper in the United States District Court for the Western District of Washington because this is the location of the real property securing the interest of the Defendant. As the defendants are licensed in all 50 states, the jurisdiction is supported.

## Revised Code of Washington Background

26. The Revised Code of Washington ("RCW") is a compilation of all permanent laws currently in force in the State of Washington. In accordance, RCW 61.16.030 states, "Failure to acknowledge satisfaction of mortgage – damages – order. If the mortgagee fails to acknowledge satisfaction of the mortgage as provided in RCW 61.16.020 sixty days from the date of such request or demand, the mortgagee shall forfeit and pay to the mortgagor damages and a reasonable attorneys' fee, to be recovered in any court having competent jurisdiction, and

said court, when convinced that said mortgage has been fully satisfied, shall issue an order in writing, directing the auditor to immediately record the order."

REMEDY FOR STATE LAW VIOLATION

27. Pursuant to RCW 61.16.030, Plaintiff is entitled to a forfeiture, damages in the amount of $67,309 and reasonable attorneys' fee.

---

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT**

**15  U.S.C. § 1692(e)**

28

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

29

The FDCPA is a strict liability statute which specifically prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information regarding a consumer." 15 U.S.C. § 1692e(10). The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debts collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt

COMPLAINT - 8

collection abuses." <u>Miller v. Javitch, Block & Rathbone</u>, 561 F.3d 588, 591 (6th Cir. 2009) (quoting 15 U.S.C. § 1692(e)).

30

To assess whether particular conduct violates the FDCPA, courts use the "least sophisticated debtor" standard. *See Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988). This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd." <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318-19 (2nd Cir. 1993).

31

When applying the "least sophisticated consumer" standard, the Misleading statement must also be materially false or misleading to violate FDCPA 15 U.S.C. § 1692e. *Miller* at 596-97. "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326-27 (6th Cir. 2012).

32

Given the tests above, it is very clear that if Defendant cannot what is owed and get different answers and will not accept pay check and unlawful amounts alleged due and owing. Also the payoff statements were delayed and fees were added to avoid allowing the payoff as a scheme and improper. The delays were on part of the bank not the Plaintiff

and Plaintiff acted judiciously and expeditiously to send payoff checks to bank. The bank REFUSES to pay off the loan. This constitutes breach of fair debt collection practices.

## FDCPA COUNT 1
### 15 U.S.C. § 1692 E(2) – FALSE OR MISLEADING REPRESENTATION IN COMMUNICATIONS

33.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

34.

Plaintiff sent payoff check immediately and bank held funds and refused the requisite amount in order to pay off the loan.

35.

See above factual allegations in Section 32 of this complaint.

36.

Given Plaintiff denies the Note is in default, the bank given amounts that are not correct and contrived only to refuse FULL pay off from Plaintiff. Also the amount of the debt is wrong. Defendant refuses to correct or acknowledge that the amount is wrong.

37.

Given Defendants failed, refused, or cannot respond to Plaintiff's requests to pay off loan and deny said lawful tender and then demand more money after multiple good faith attempts from Plaintiff to

COMPLAINT - 10

pay off the loan. Therefore the Defendant servicer communicated false information concerning the legal status of the alleged debt by refusing full payment under the Note and Deed of Trust.

38.

By its actions, Defendants, violated 15 U.S.C. § 1692 e(2) regarding communication related to the character, amount, or legal status of the alleged debt.

## FDCPA COUNT 2
## 15 U.S.C. § 1692 F – UNFAIR PRACTICES

39.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

40.

Plaintiff requested payoff and therefrom submitted full payment to the Servicer and Lender.

41.

Defendants refused to accept a valid payoff of the loan. This constitutes an improper and unlawful denial of proper payoff funds and over several different attempts from borrower to pay off the loan.

42.

The lender refused proper payoff after giving the Borrower/Plaintiff the payoff amount and then refusing said payoff.

COMPLAINT - 11

43.

Plaintiff, a reasonable and prudent person, sent payoff to lender/servicer in the stated amount.

44.

The debt amount is incorrect as it changed several times and appears changed in order for Defendants to NOT accept a proper payoff several times from Plaintiff.

### THIRD CLAIM FOR RELIEF

### BREACH OF GOOD FAITH AND DUTIES OF CARE

134.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

135.

The UCC at RCW 62A.1-201b(20) shows, ""Good faith," except as otherwise provided in Article 5, means honesty in fact and the observance of reasonable commercial standards of fair dealing." RCW 62A.1-304 shows, "Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement."

136.

Under Washington's foreclosure laws and the UCC, Quality Loan Servicing failed to:

a.      Exercise its duty of good faith toward the borrower by not accepting a payoff that Defendants sent to Plaintiff and Plaintiff exercised its right to pay off loan several times.

b.Instead of accepting said pay off it just created more fees and refused its own payoff quote.

c.Provide accounting that was not correct and manipulated only to provide reasons to unlawfully deny the payoff amount from Plainitff.

137.

Servicer and Lender failed to fulfill its duty to Plaintiff by failing to act in a legal and reasonable manner to accept a payoff amount that it had provided to Plaintiff in the first instance.

## SIXTH CLAIM FOR RELIEF
## WRONGFUL ACCOUNTING/FRAUD

138.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

139.

Plaintiff asked the Defendant for a payoff and Defendants provided the payoff to Plaintiff and when Plaintiff made the payment, then the Defendants refused to accept payment and proceed to charge Plaintiff more late fees.  This is fraudulent and disingenuous.

140.

Plaintiff has now sent the payment in 3 different times at the request of different payments and payoff amounts from the lender and servicer.  This is not proper conduct on part of the lender/servicer and has caused damages and emotional distress to Plaintiff for no reason.

### Prayer for Relief

WHEREFORE, Plaintiff prays for her costs and disbursements incurred herein and for the following in accordance with the proof at trial:

COMPLAINT - 13

• Forfeiture;

• Damages;

• Reasonable attorneys' fees and costs;

• Prejudgment and post judgment interest as appropriate and allowed by law;

• On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump-sum payment, rather than the benefits of mortgage deductions over the applicable time frame;

• A declaration that Defendant has violated Plaintiff's rights and an order requiring Defendant to take appropriate steps to make Plaintiff whole;

• Any other relief this Court may determine to be fair and just.

Respectfully submitted,

 /s/ John A. Cochran
John A. Cochran, WSBA No. 38909
Pacific Property Law LLC
1033 SW Yamhill St., Ste. 201
Portland, OR 97205
P: (360) 601-8157
E: john@thecochranlawfirm.com

COMPLAINT - 14